DEAN FOODS COMPANY, a Delaware Corporation, Plaintiff,

v.

WISCONSIN DEPARTMENT OF AGRICULTURE, TRADE AND CONSUMER PROTECTION and Gary Rohde, its Secretary, Defendants.

No. 77–C–251.

United States District Court, W. D. Wisconsin.

Aug. 31, 1979.

Robert J. Kay of Geisler & Kay, S. C., Madison, Wis., for plaintiff.

Bronson C. La Follette, Atty. Gen., State of Wisconsin by Theodore Priebe, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, Chief Judge.

For the purpose of deciding plaintiff's motion for a preliminary injunction, and only for that purpose, I find as fact those matters set forth hereinafter under the heading "Facts."

### Facts

Plaintiff is a Delaware corporation with its principal offices at 3600 River Road, Franklin Park, Illinois, and is the manufacturer of Dean's "Choco-Riffic," a non-dairy beverage. Dean Foods Company is duly licensed to do business and does business in the State of Wisconsin, its address and registered office and agent in this state being C. T. Corporation Systems, 222 West Washington Avenue, Madison, Wisconsin 53703.

Defendant, Wisconsin Department of Agriculture, Trade and Consumer Protection is an agency of the State of Wisconsin, created under Chapter 93 of the Wisconsin Statutes and invested with the duty to enforce and cause to be enforced the provisions of Chapter 97 of the Wisconsin Statutes relating to food regulation. Defendant Rohde is the duly appointed Secretary of the Department.

Plaintiff manufactures its product known as "Choco-Riffic" at its plant in Chemung, Illinois. Choco-Riffic is presently approved for sale and is being sold in about fourteen states.

Plaintiff desires and intends to sell Choco-Riffic to retail stores in Wisconsin for resale to individual customers, in gallon plastic containers and in one-half gallon cardboard containers.

Defendants have asserted that they will enforce the provisions of § 97.48(1) of the Wisconsin Statutes against plaintiff by seizing Choco-Riffic and seeking the institution of criminal actions under § 97.48(1) and § 97.72 of the Wisconsin Statutes if plaintiff sells Choco-Riffic in the State of Wisconsin. Defendants have ordered a certain quantity of Choco-Riffic to be removed from a truck operated by plaintiff's Wisconsin distributor. Said threats of civil sanctions and criminal prosecution have resulted in a total ban of Choco-Riffic in the State

of Wisconsin. Such a ban denies plaintiff access to what has proved to be one of its major markets for its other products, and thus will substantially impede plaintiff's sales of Choco-Riffic.

Because of defendants' threats, plaintiff has lost money and it continues to lose money at the rate of approximately $33,000 per month in net sales. The damage is irreparable because plaintiff enjoys no remedy at law against these defendants.

If permitted to sell Choco-Riffic to stores in Wisconsin, plaintiff intends to sell it in containers bearing the following label:

**Dean's**

# CHOCO-RIFFIC!

A NON-DAIRY DRINK • CONTAINS NO MILKFAT
100H DIST. BY DEAN FOODS CO., FRANKLIN PARK, ILL. 60131

**PASTEURIZED CHOCOLATE FLAVORED DRINK**
**NUTRITION INFORMATION PER SERVING**

| SERVING SIZE ONE CUP | PERCENTAGE OF U.S RECOMMENDED DAILY ALLOWANCES (U.S. RDA) | |
|---|---|---|
| SERVINGS PER CONTAINER 16 | PROTEIN 6 | RIBOFLAVIN 15 |
| CALORIES 160 | VITAMIN A 0 | NIACIN 0 |
| PROTEIN 3 GRAMS | VITAMIN C 0 | CALCIUM 20 |
| CARBO- | THIAMINE 2 | IRON 0 |
| HYDRATE 27 GRAMS | ING: WATER, WHEY, SUGAR, SATURATED COCONUT OIL, CORN SWEETENER, COCOA (PROCESSED WITH ALKALI), SODIUM | |
| FAT 5 GRAMS | CASEINATE, CARRAGEENAN, GUAR GUM, SALT, DIPOTASSIUM | |

PHOSPHATE, MONO AND DIGLYCERIDES, ARTIFICIAL FLAVOR, LECITHIN AND SODIUM PHOSPHATE

The label is accurate.[1]

Choco-Riffic is a blend of condensed whey (which is a dairy product), sugar, coconut oil, corn sweeteners, cocoa and sodium caseinate with stabilizers, emulsifiers, and other flavorings. It contains no milk fat; only vegetable fat or saturated coconut oil. It contains 1% fat, has a protein level of 1.1%, and has a lactose level of 3.1%. In a one-cup serving, Choco-Riffic contains 160 calories, 3 grams of protein, 27 grams of carbohydrate, and 5 grams of fat, and the following percentages of United States recommended daily allowances: protein, 6; vitamin A, 0; vitamin C, 0; thiamine, 2; riboflavin, 15; niacin, 0; iron, 0; and calcium, 20.

Chocolate flavored 1% lowfat milk contains 1% fat, and has a protein level of 2.5–2.7%. In a one-cup serving, chocolate flavored lowfat milk, containing 8.6% solids not fat, contains 8 to 9 grams of protein and the following percentages of United States recommended daily allowances: protein, 20; vitamin C, 4; vitamin $B_6$, 4; vitamin $B_{12}$, 15, thiamine 6, riboflavin 25, niacin and iron less than 2, calcium 30, phosphorous 20, magnesium 8, zinc 4, and pantothenic acid 6.

Choco-Riffic is nutritious, wholesome and appetizing. It is nutritionally inferior to chocolate flavored 1% lowfat milk, particularly as to protein and calcium. Choco-Riffic is higher in carbohydrates. Choco-Riffic has approximately half the nutritional value of chocolate-flavored 1% lowfat milk. It has significantly more nutritional value than most fruit flavored drinks, such as Hi-C or colas or un-colas.

Choco-Riffic and chocolate-flavored 1% lowfat milk are similar in terms of total solids, color, flavor, body, sweetness level, texture, viscosity, taste, and odor. Simply by viewing, tasting, smelling and touching the two products themselves, without regard to packaging, labeling, and method of display, few purchasers and consumers could distinguish one from the other. Thus, in a restaurant, or in a hospital or school or similar establishment, few persons consuming one of the two products by unmarked glass or cup could distinguish it from the other.

Choco-Riffic is priced considerably lower than chocolate-flavored 1% lowfat milk.

As a compound food, Choco-Riffic has no federal standard of identity. Chocolate lowfat milk is a food defined in the Code of Federal Regulations (21 CFR 131.135) and must conform to the standard of identity. Choco-Riffic may vary from production run

---

1. There is dispute in this record whether the labeling of the half-gallon container states that it is a non-dairy product. I accept plaintiff's representation that if permitted to sell Choco-Riffic in Wisconsin in half-gallon containers, it would be labeled to state that it is a non-dairy drink and that it contains no milkfat.

to run since no standard of identity exists. Its formulation, composition or nutritional value, in terms of protein or vitamin content, or the use of differing types of vegetable oils, sweeteners or other ingredients at differing levels, could vary substantially from time to time, depending on ingredient costs, competitive prices or other economic or marketing factors. As a result it may become more or less nutritious than the Choco-Riffic presently formulated and labeled.

Choco-Riffic is marketed in containers identical in shapes and color schemes to standard half gallon pure pack containers used for dairy products including chocolate flavored lowfat milk. Choco-Riffic is also sold in plastic gallon containers identical to those used for dairy products, including chocolate flavored lowfat milk. Choco-Riffic is marketed in dairy cases among fluid milk products.

With the approval of the defendant Department, plaintiff markets in Wisconsin a non-dairy creamer or whitener, which contains sodium caseinate and lactose, both dairy product derivatives.

A number of other non-dairy products on the market in Wisconsin contain vegetable oil or vegetable fat of some type in combination with other ingredients. For example, the following products with vegetable fat were available for purchase at the Eagle Store at 2426 South Park Street, Madison, Wisconsin, on June 13, 1977:

| PRODUCT | INGREDIENT LISTING |
|---|---|
| Pillsbury Quick Corn Muffins | Enriched bleached flour, water, yellow corn meal, shortening with mono- and diglycerides, sugar, yellow corn flour, leavening, nonfat dry milk, dried egg yolk, rice flour, natural flavor. |
| Lady Lee All-Purpose Non-Dairy Creamer | Water, corn syrup, vegetable fat, mono-diglycerides, soy protein, sodium stearoyl-2 lactylate, polysorbate 60, dipotassium phosphate, disodium phosphate, sodium acid pyrophosphate, artificial color. |
| Rich's Whip Topping | Water, vegetable fats, corn syrup, methyl ethyl cellulose, polysorbate 60, polyglycerol esters of fatty acids, salt, artificial flavors, artificial color, charged with nitrous oxide. |
| Betty Crocker Chocolate Flavor Pudding | Nonfat milk, liquid sugar, modified corn starch, vegetable shortening, dextrose, cocoa processed with alkali, mono and diglycerides, salt, natural and artificial flavors, artificial color. |
| Nabisco Buttery Flavored Sesame Snack Crackers | Enriched wheat flour, rye flour, sesame seeds, shortening, pure creamery butter, sugar, corn sweetner, salt and leavening. |
| Zander's Sweet Cream Butterine | Prepared from sweet cream (milk-fat), partially hardened soybean oil, water, salt, non-fat dry milk, artificial coloring. |
| Dream Whip Whipped Topping Mix | Sugar, hydrogenated palm kernel and soybean oils, propylene glycol monosterate (emulsifier—for uniform blending of oils), corn syrup solids, sodium caseinate (a protein), whey solids, sodium silicoaluminate (prevents caking), hydroxylated soybean lecithin and acetylated monoglycerides (emulsifiers), artificial flavor, BHA and citric acid (preservatives), and artificial color. |
| Wish Bone Chunky Blue Cheese Dressing | Vegetable oil, water, blue cheese flavored bits, blue cheese, distilled vinegar, sugar, salt, natural flavor, lactic acid for tartness, spice, algin derivative, xanthan gum, glyceryl monosterate and polysorbate 60 for con- |

| | |
|---|---|
| | sistency, dehydrated onion, potassium sorbate to preserve freshness, artificial flavor. |
| Mazola Pure Corn Oil | Corn oil with isopropyl citrate and methyl silicone added to preserve freshness. |
| Lady Lee Creamy White Frosting Mix | Sugar, dextrose, corn syrup, solids, animal fat (beef fat and/or lard and saturated beef fat and/or lard) freshness preserved with BHA, BHT and citric acid, and/or partially saturated vegetable oil shortening (contains one or more of the following: soybean, corn, palm, coconut, cottonseed oil), modified food starch, salt, mono and diglycerides, sorbitan monosterate, polysorbate 60, artificial flavor and color. |
| Jell-O Cheesecake | Sugar, cheese, wheat flour, hydrogenated palm kernel and soybean oils, buttermilk, graham flour, modified tapioca starch, molasses, whey, sodium phosphates (for proper set), corn syrup solids, invert sugar syrup, salt, sodium caseinate (a protein), polyglycerol ester of fatty acids (emulsifier—for uniform blending of oil), artificial flavor, artificial color, BHA, TBHQ and citric acid added as preservatives, natural flavor. |
| Betty Crocker German Chocolate Cake Mix | Sugar, enriched flour bleached (with niacin, iron, thiamin, mononitrate, riboflavin), animal and/or vegetable shortening (contains one or more of the following partially hydrogenated fats: soybean oil, cottonseed oil, beef tallow, palm oil, lard) with freshness preserved by BHA and BHT, dried corn syrup, cocoa, nonfat milk, wheat starch, propylene glycol monoesters, baking soda +, artificial flavor, salt, monocalcium phosphate +, mono and diglycerides, guar gum, + leavening. |
| Nature Valley Granola Bars—Peanut | Rolled oats, brown sugar, dry roasted peanut pieces, coconut oil, salt, sesame seeds, soy lecithin and natural flavoring. |
| Betty Crocker AuGratin Potatoes | Dried potatoes (with freshness preserved by sodium sulfite), corn starch, dried whey, salt, dried cheddar cheese, hydrogenated vegetable oil, dried buttermilk, dextrin enriched flour (bleached), dried onion, leavening, natural flavorings, monosodium glutamate, wheat starch, dried blue cheese, dried garlic, artificial coloring, sodium phosphate, disodium inosinate, disodium guanylate. |

---

### Opinion

Jurisdiction is present. 28 U.S.C. § 1331.

1. *Is the sale of Choco-Riffic prohibited by § 97.48(1), Wis.Stat.?*

Section 97.48(1) provides: "No person shall sell any food which purports to be or is represented as . . . milk . . . or any of the fluid derivatives thereof which contains any fat or oil other than milk fat, either under the name of said food or the derivatives thereof or under any fictitious or trade name." Choco-Riffic is a food. It contains fat other than milk fat. It is to be sold, if sale is permitted, under a fictitious or trade name. The question is whether it "purports to be . . . milk" or "is represented as . . . milk."

The statutory language is awkward. It was open to the legislature to adopt plainly an objective standard. For example, the sales prohibition might have been directed to any food which contains fat or oil other than milk fat and which so closely resem-

bles milk in terms of total solids, color, flavor, body, sweetness level, texture, viscosity, taste, and odor as to make it reasonably probable that if they rely wholly on viewing, tasting, smelling and touching the food, purchasers and consumers will confuse it with milk. (I will refer to this as a strictly sensual test.) Instead, the tests are expressed as whether the food either (1) purports to be milk, or (2) is represented as milk.

■ It is doubtful whether an inanimate object such as a food can "purport" to be anything. People purport. Thus, "purports to be" may be synonymous with "is represented as." However, rules of statutory construction require me to avoid, if possible, the conclusion that the phrases are redundant. As applied to an inanimate object, "to purport" can be considered to mean "to possess physical characteristics which prompt people to draw inferences about the source, nature, or function of the thing." Redundancy can be avoided in this case, with some difficulty, by giving to the phrase "purports to be" the objective and strictly sensual meaning described in the immediately preceding paragraph of this opinion, and I do give it that meaning.

It is troublesome that to give this objective and strictly sensual meaning to "purports to be" may create an inconsistency with the alternative statutory test ("is represented as"). If the objective and strictly sensual test of probable confusion is met and if, in addition, the manufacturer or distributor expressly and falsely represents the food as milk, there is no inconsistency. If the objective and strictly sensual test is met, but if, in addition, the manufacturer or distributor expressly, truthfully and effectively represents that the food is not milk, there is inconsistency.

■ Under the circumstances, and without the benefit of a state judicial decision applying or declining to apply § 97.-48(1) to Choco-Riffic or anything closely resembling Choco-Riffic, I defer to the construction placed upon the statute by the defendants, to whom its administration is entrusted. I have found as fact that by the objective and strictly sensual test, it is reasonably probable that purchasers and consumers will confuse Choco-Riffic with milk. For the purpose of deciding the plaintiff's motion for a preliminary injunction, and only for that purpose, I hold that the sale of Choco-Riffic is forbidden by § 97.48(1).[2]

> 2. *Does § 97.48(1), Wis.Stat., as applied to Choco-Riffic, violate the due process clause of the Fourteenth Amendment?*

■ The test to be applied in answer to this question is whether one or more legitimate interests of the state are at stake and, if so, whether the prohibition embodied in § 97.48(1) is rationally related to the vindication of those interests. There is a legitimate state interest at stake: to protect consumers, particularly children, from the long-range consequences of an unwitting choice of a diet less nutritious than another diet.

As I have found in part (1) of this opinion, by an objective and strictly sensual test, it is reasonably probable that purchasers and consumers will confuse Choco-Riffic with milk. I have found as fact, also, that Choco-Riffic is about half as nutritious as chocolate-flavored 1% lowfat milk. A prohibition against the sale of Choco-Riffic is rationally related to the state's interest in preventing persons from choosing, in ignorance, a nutritionally inferior product, and experiencing the long-range dietary consequences.

Substantive due process, within the meaning of the Fourteenth Amendment, requires only that the means chosen be rationally related to the state interest at stake, and not that the particular means be

---

2. The objective and strictly sensual test embodied in "purports," as I have construed it, means that § 97.48(1) is not simply a labeling statute. Plaintiff argues that it was characterized as a labeling statute in *Coffee-Rich, Inc. v. Depart-* *ment of Agriculture*, 70 Wis.2d 265, 234 N.W.2d 270 (1975). But it was § 97.48(4) rather than § 97.48(1) which was construed in *Coffee-Rich.*

the least restrictive or even less restrictive than others.

3. *As applied to Choco-Riffic, does § 97.-48(1), Wis.Stat., violate the equal protection of laws clause of the Fourteenth Amendment?*

█ In answering this question there is to be applied the same standard as that applied in testing for a denial of due process.

In addition to the contentions already discussed, however, plaintiff contends that it has been denied equal protection because the defendants have not prohibited the sale of many food products which contain vegetable oil, or vegetable fat of some type, in combination with other ingredients; such products, for example, as corn muffins, a creamer, whip topping, chocolate flavor pudding, snack crackers, blue cheese dressing, corn oil, frosting mix, cheesecake, cake mix, peanut bars, and au gratin potatoes. This simple assertion misses the point. It is not the presence in Choco-Riffic of a fat or oil other than milk fat which has promoted defendants' prohibitory measures. The measures are prompted by defendants' opinion that Choco-Riffic "purports to be or is represented as" chocolate-flavored 1% lowfat milk. In this lawsuit plaintiff may ultimately show that a number of the other products just referred to "purport to be or are represented as" milk, ice cream, cheese, cheese food compounds, or some other substance specified in § 97.48(1). If so, an equal protection issue may be presented. But plaintiff has made no such showing to date.

4. *Does § 97.48(1), as applied to Choco-Riffic, unduly burden interstate commerce in violation of the Commerce Clause?*

This is not a case in which Wisconsin has imposed regulations upon the very instrumentalities of interstate commerce, such as railroad cars or motor trucks. Nor is it a case in which the state has engaged in some transparent or egregious effort to promote the economic interests of its own people at the expense of the economic interests of the people of other states (although, among the many foods which might be candidates for special protection against deceptive rivals, the choice of milk by the Wisconsin legislature might give rise to some suspicion).

█ On the other hand, the state interest at stake is not safety. There is no contention by defendants that Choco-Riffic is unhealthy, deleterious or non-nutritious. Therefore, this is not a case in which the courts will defer totally to state legislatures in their choices among alternative solutions to a safety problem. *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). Rather, it is the kind of case in which the standards enunciated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) are to be applied.

Section 97.48(1) appears to regulate even-handedly, as between intrastate and interstate commerce, in order to effectuate a legitimate local public interest. The effect of the statute on interstate commerce is only incidental. Under *Pike v. Bruce Church, Inc.*, in such a case, the question is whether the burden on interstate commerce "is clearly excessive in relation to the putative local benefits." 397 U.S., at 142, 90 S.Ct., at 847. The question is one of degree. "And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Ibid.*

█ In the present case, the "extent of the burden" on interstate commerce is extreme: that is, total prohibition against the sale in Wisconsin of a product manufactured in Illinois.

The "nature of the local interest involved," as I have said is to spare Wisconsin purchasers and consumers from the dietary consequences of consuming a certain nutritious food over a period of time in the mistaken belief that they are consuming another and more nutritious food. There is no suggestion, and can be none, that the state enjoys the power to compel purchasers

and consumers to make a knowing choice of a more nutritious healthy food over a less nutritious healthy food. The precise nature of the "local interest involved" is that Wisconsin purchasers and consumers should enjoy the opportunity to make a knowing choice. The ultimate question under *Pike v. Bruce Church, Inc.*, therefore, is whether this precise local interest "could be promoted as well with a lesser impact on interstate activities."

As construed by the defendants, and now by this court, § 97.48(1) reflects a decision that the best way to avoid an unwitting choice is to eliminate entirely the opportunity to choose. This can be described only as the most burdensome, gross, and radical of the alternative means available. The least burdensome is to permit the sale of Choco-Riffic, subject to those minimal requirements as to labeling, packaging, display or advertising reasonably necessary to assure that purchasers of average intelligence and prudence will be provided the opportunity to make a knowing choice.

On this critical question, defendants simply assert that no regulations of labeling, packaging, display or advertising can be effective. William J. Hansen, compliance and technical services officer of the Food Division, State of Wisconsin Department of Agriculture, Trade and Consumer Protection, by affidavit, testifies that the consumer is "not competent to make necessary judgments on the nutritional equivalency of substitutes or imitation products as compared to milk or chocolate-flavored fluid milk products, or the overall effect the use of substitute products may have on human health"; and that "because of the ease with which the product may be substituted or mistaken for fluid milk products, the sale or serving of substitute products such as Choco-Riffic could not be adequately regulated or controlled by labeling alone, and particularly so at the restaurant, service or institutional level." Flat assertions of this kind cannot justify defendants' declination to explore alternative measures imposing lesser burdens on interstate commerce. Moreover, they are belied by defendants' willingness to permit the sale of Choco-Riffic in Wisconsin provided that it is "clearly labeled to show [its] composition and the fact that [it is] to be sold exclusively for use as directed by physicians for the feeding of invalids and children." § 97.-48(2).[3] When defendants are unable to show that Choco-Riffic is deleterious in any degree, there is a touch of malice in this condescending suggestion. But the immediately relevant point is that defendants consider clear labeling an effective guide to purchasers' choices, so long as the content of the label is forbidding enough to suit their purpose.

I have spoken of knowing choices by purchasers. Purchasers would include the family member who travels to the store, observes the labeling, the packaging, and the display, and purchases the food product then to be consumed by himself or herself and the other family members. It also includes the persons who are empowered to make the purchases of food for hospitals or schools or prisons and thus to make the choice of what other persons will consume. I appreciate that a special problem arises in the restaurant setting in which a person, acting both as a purchaser and a consumer, may be deprived of the knowledge he or she should possess in making a knowing choice of what he or she is to consume. Perhaps special measures may be appropriate in this context. The problem has not proved intractable. See *Coffee-Rich, Inc. v. Department of Agriculture*, 70 Wis.2d 265, 278–279, 234 N.W.2d 270.

Plaintiff enjoys a reasonably good chance to prevail ultimately in its contention that defendants' flat prohibition of the sale of Choco-Riffic unduly burdens interstate commerce. Plaintiff has made a sufficient showing that its financial losses are irreparable. The public interest does not require that a healthy, nutritious food be barred from sale during the pendency of this action.

---

**3.** Such labeling, if read by potential purchasers, would obviously have a drastic adverse impact on sales.

Because specific alternatives to outright prohibition of the sale of Choco-Riffic seem not to have been explored, there is some question as to the appropriate form of preliminary injunctive relief. I have decided to express it in terms of a preliminary ban on outright prohibition of sale. The order is not intended to prevent defendants, during the pendency of this action, from imposing less restrictive measures. However, defendants are required to provide plaintiff with not less than 30 days' written notice of their intention to impose such measures, so that plaintiff will enjoy the opportunity to seek judicial intervention if they choose to seek it.

### Order

It is hereby ordered that plaintiff's motion for a preliminary injunction is granted. Defendants are enjoined, pending further order of the court, from prohibiting the sale and distribution of Choco-Riffic in Wisconsin.