**DEAN FOODS COMPANY, a Delaware Corporation, Plaintiff,**

v.

**WISCONSIN DEPARTMENT OF AGRICULTURE, and Gary Rohde, its Secretary, Defendants.**

No. 77–C–251.

United States District Court,
W. D. Wisconsin.

Dec. 22, 1980.

Robert J. Kay of Geisler & Kay, S. C., Madison, Wis., for plaintiff.

Bronson C. La Follette, Atty. Gen., State of Wisconsin by Richard J. Boyd, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

When plaintiff's motion for a preliminary injunction was briefed and argued, plaintiff contended that Wis.Stats. § 97.48(1)[1] was inapplicable to Choco-Riffic. Plaintiff asserted that § 97.48(1) "is simply a labeling statute designed to prevent consumer confusion and deception. . . ." Memorandum in support of motion for temporary restraining order, filed February 14, 1978, pages 2–3. It was undisputed, and no doubt it remains undisputed, that the label borne by Choco-Riffic states: "A NON-DAIRY DRINK—CONTAINS NO MILK-FAT." Therefore, plaintiff contended that Choco-Riffic does not purport to be and is not represented as milk, and is not "any food" as defined in § 97.48(1).

In opposing the motion, defendants refrained from contending that Choco-Riffic "is represented as" milk, but did contend that it "purports to be" milk. They asserted that Choco-Riffic's physical appearance is identical to chocolate milk, that it has the taste and texture of chocolate milk, that it is packaged in cartons identical in design to those utilized for chocolate milk, that plaintiff's every effort has been to compound a product which would readily substitute for chocolate milk, and that Choco-Riffic assumes the physical properties of chocolate milk. In these ways, they argued, Choco-Riffic "purports to be" milk. Memorandum in opposition to motion for preliminary injunction, filed March 1, 1978, pages 5–6.

On August 31, 1979, I entered an opinion and order D.C. 478 F.Supp. 224 granting plaintiff's motion for a preliminary injunction preventing defendants from prohibiting the sale and distribution of Choco-Riffic in Wisconsin. I found as fact that if plaintiff was permitted to sell Choco-Riffic to stores in Wisconsin, it would bear a label stating: "A NON-DAIRY DRINK—CONTAINS NO MILKFAT." I also found as fact, among other things:

(1) Choco-Riffic and chocolate-flavored 1% lowfat milk are similar in terms of total solids, color, flavor, body, sweetness level, texture, viscosity, taste, and odor. Simply by viewing, tasting, smelling and touching the two products themselves, without regard to packaging, labeling, and method of display, few purchasers and consumers could distinguish one from the other. Thus, in a restaurant, or in a hospital or school or similar establishment, few persons consuming one of the two products by unmarked glass or cup could distinguish it from the other.

[1] No person shall sell any food which purports to be or is represented as ice cream, ice milk, sherbet, cheese, cottage cheese, process cheese, cheese food compounds, butter, milk, cream, skim milk, buttermilk, condensed or evaporated milk, powdered milk, condensed skim milk, or any of the fluid derivatives thereof which contains any fat or oil other than milk fat, either under the name of said food or the derivatives thereof or under any fictitious or trade name.

(2) Choco-Riffic is marketed in containers identical in shapes and color schemes to standard half gallon pure pack containers used for dairy products including chocolate flavored lowfat milk. Choco-Riffic is also sold in plastic gallon containers identical to those used for dairy products, including chocolate flavored lowfat milk. Choco-Riffic is marketed in dairy cases among fluid milk products.

In re-reading my August 31, 1979, opinion and order, I observe that I did not expressly reject the proposition that Choco-Riffic "is represented as" milk, just as defendants had not expressly rejected it. But, just as I inferred that proposition from defendants' silence, I implied it by mine. I now make clear that as of August 31, 1979, I consciously rejected the proposition that Choco-Riffic "is represented as" milk, and thus concluded that § 97.48(1) applies only if Choco-Riffic "purports to be" milk. I then acceded to what I understood to be the defendants' insistence: that Wis.Stats. § 97.48(1) embodies what I referred to then as an "objective standard," that is, "a strictly sensual test." As applied to an inanimate object, I held that the words "to purport" can be considered to mean "to possess physical characteristics which prompt people to draw inferences about the source, nature, or function of the thing." In light of my findings of fact, Choco-Riffic possesses physical characteristics which prompt people to draw the inference that it is chocolate-flavored lowfat milk. I adopted that construction of the words "purports to be," and held that Choco-Riffic "purports to be" milk, in this sense. Although I did not articulate the point at the time and did not fully appreciate its implications, I held, in effect, that § 97.48(1) prohibits the sale of food (which contains any fat or oil other than milk fat) if its physical resemblance to milk is sufficiently close, without regard to any other factor involved in causing or eliminating confusion. Specifically, I held that the sale of Choco-Riffic is forbidden by the "purports to be" branch of § 97.48(1). I went on to hold that the plaintiff enjoys a reasonably good chance to prevail ultimately in its contention that defendants' flat prohibition of the sale of Choco-Riffic, pursuant to § 97.48(1), unduly burdens interstate commerce.

At a pretrial conference on September 4, 1980, and in a memorandum of that conference entered September 8, 1980, it was ordered at plaintiff's request that the court would re-address the question whether the words "purports to be" should be construed to embody the strictly sensual test. The question has been freshly briefed. It is to this question that this opinion and order are addressed.

When I construed the statute as I did on August 31, 1979, I described the critical language as awkward; observed that it is doubtful whether an inanimate object can "purport" to be anything; and called it troublesome that to give this objective and strictly sensual meaning to "purports to be" might create an inconsistency with the alternative statutory test ("is represented as"). Nevertheless, I was finally persuaded to construe "purports to be" as I did: (a) because it permitted me to avoid the conclusion that the phrases "purports to be" and "is represented as" are redundant; and (b) because so to construe "purports to be" was to defer to the construction placed upon the statute by the defendants, to whom its administration had been entrusted. In the course of the recent rebriefing, and in the light of defendants' proposed statement of issues, filed May 5, 1980, I perceive ambiguities in the positions of the parties (particularly the position of the defendants) not earlier perceived, and difficulties in arriving at a fair and sensible construction of § 97.48(1) not earlier perceived.

Plaintiff's position as most recently expressed is the following: The entire phrase "any food [which contains any fat or oil other than milk fat] which purports to be or is represented as ... milk" relates exclusively to labeling. The evil sought to be prevented is the conveyance of misinformation by means of a label, whether impliedly or expressly. Thus, if a Choco-Riffic label states "this is milk," the substance within the container is "represented as" milk. If the label conveys more obscurely the mes-

sage that the substance within the container is milk, then the substance "purports to be" milk. On the other hand, if the label states "this is not milk," the substance within the container neither is represented as, nor purports to be, milk.

Defendants' position is more difficult to discern and to summarize. They seem to say that in the context of § 97.48(1), the words "is represented as" relate to packaging and labeling only, and that to "represent" is to present or picture something to the mind, not only by words but by anything about the packaging or labeling that is visible.[2] They say that the words "is represented as" and "purports to be" "overlap each other in some respects," but that the words "purports to be" are "considerably broader." The following sentence is offered in an effort to define "purports to be" and to explain the relationship between the two terms:

> "The general appearance, color, consistency, mode of packaging, distribution and marketing, manner of display and labeling of a food product may be such that it purports to be a dairy product covered by sec. 97.48(1), Stats., even though none of these factors taken singly and apart from other factors would cause such deception."

The sentence just quoted, taken together with the discussion which precedes it in defendants' brief, seems to have the following meaning. With respect to a food product containing any fat or oil other than milk fat, there are two factors to be considered initially: (1) the mode of packaging of it; and (2) the labeling of it. If either of these factors, standing alone, is sufficient to make it reasonably probable that buyers will believe that the food product is milk, then it "is represented as" milk and § 97.-48(1) applies for that reason. But if neither

factor (1) nor factor (2), standing alone, is sufficient to make it reasonably probable that buyers will believe that the food product is milk, then it is not "represented as milk" within the meaning of § 97.48(1). With respect to the effect of "purports to be," seven factors must be considered: (1) the mode of packaging of the food product; (2) the labeling of it; (3) the manner in which it is distributed and marketed; (4) the manner in which it is displayed; (5) the general appearance of the substance within the package; (6) the color of that substance; and (7) the consistency of that substance. If these seven factors, and no fewer than all of seven of them, standing together, are sufficient to make it reasonably probable that buyers will believe that the food product is milk, then it "purports to be" milk and § 97.48(1) applies for that reason.

I am quite sure that the literal reading I have given these passages from defendants' brief is not the intended reading. But I am left genuinely uncertain about the defendants' position. I am inclined to think that it is something like this: A food product containing any fat or oil other than milk fat "is represented as" milk if the packaging of it, the manner in which it is displayed, or the labeling of it, or any combination of these three factors, present or picture to the minds of buyers that the substance within the package is milk.[3] However, if one, two or all three of these factors fail to present or picture to the minds of buyers, exercising all their senses, that the substance within the package is milk, then it is not "represented as" milk and § 97.48(1) is inapplicable, unless it can be found that the subject "purports to be" milk. To determine whether it "purports to be" milk, it is necessary to consider the substance itself—its

---

**2.** Counsel for the defendants refers as well to impressions gained from the spoken word, but I do not understand how this relates to packaging or labeling. On the other hand, counsel does not refer to the sense of touch, or the sense of hearing as it bears on the sounds of liquids and solids within containers, but a package might create impressions through these senses.

**3.** I omit the manner in which the food product is distributed and marketed. Except as distribution and marketing embody the manner in which the food product is displayed, I do not understand how they can present or picture anything to the minds of retail buyers.

color and consistency, for example—in addition to the packaging of it, the manner in which it is displayed, and the labeling of it. If one or more of these attributes of the substance itself, when taken together with the packaging of it, the manner in which it is displayed, or the labeling of it, or some combination of these latter three factors, make it reasonably probable that buyers will believe the substance is milk, then the substance "purports to be" milk, and § 97.-48(1) applies.

In the course of this reconsideration of how § 97.48(1) is to be construed, I have come to believe that the analysis reflected in my August 31, 1979 opinion was inadequate. I now believe that the following questions must be addressed in sequence.

1. Taken as a whole, does § 97.48(1) flatly prohibit the sale of a food (which contains any fat or oil other than milk fat) solely because the food so closely resembles milk in terms of total solids, color, flavor, body, sweetness level, texture, viscosity, taste and odor as to make it reasonably probable that it will be confused with milk by purchasers and consumers who rely wholly on viewing, tasting, smelling and touching the substance itself? If § 97.48(1) is so construed, and if the physical resemblance between milk and the challenged substance itself is sufficiently close, it is irrelevant that the label may scream a warning, or that the mode of packaging or manner of display may depart radically from the packaging and display of milk.

2. If question (1) is answered "no," then is § 97.48(1), taken as a whole, to be construed strictly as a labeling statute? That is, does it prohibit the sale of a food (which contains any fat or oil other than milk fat) only if the labeling of that food expressly or impliedly conveys the message that the food is milk? If so, and if the labeling does not expressly or impliedly convey this message, it is irrelevant that it is reasonably probable that the challenged food will be confused with milk, nevertheless, by purchasers and consumers who are affected by its extremely close physical resemblance to milk, by a deceptive mode of packaging, or by a deceptive manner of display.

3. If questions 1 and 2 are answered "no," then is § 97.48(1), taken as a whole, a prohibition against the sale of a food (which contains any fat or oil other than milk fat) if under all the circumstances, including its physical resemblance or lack of physical resemblance to milk, it is reasonably probable that the challenged food will be confused with milk by purchasers and consumers?

4. If question 3 is answered "yes," then can the phrases "is represented as" and "purports to be" reasonably be construed in such a way as to accomplish the purpose of § 97.48(1) while avoiding redundancy?

I proceed now to address these four questions.

1. *Does § 97.48(1), taken as a whole, prohibit the sale of food (which contains any fat or oil other than milk fat) if its physical resemblance to milk is sufficiently close, without regard to any other factor involved in causing or eliminating confusion?*

This question requires consideration of *62 Cases of Jam v. United States*, 340 U.S. 593, 71 S.Ct. 515, 95 L.Ed. 566 (March 26, 1951), upon which plaintiff relies.

In *62 Cases of Jam*, the United States brought a condemnation proceeding against a food product under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, alleging that it was "misbranded," within the meaning of 21 U.S.C. § 343(g). Subsection (g) provided that a food shall be deemed to be misbranded "if it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by [21 U.S.C. § 341], unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard ...." As of the time the condemnation proceeding was commenced, the Administrator had duly prescribed a definition and standard for fruit jams which required the presence of a certain proportion of fruit (45% fruit by weight and 65%–68% soluble solids contents). The food product complained of

was plainly labeled "Imitation [Grape, Strawberry, etc.] Jam," below which in very small type appeared a statement that the fruit content was "made from" various things in various percentages, including "25% fruit." The words "imitation" and "jam" were in type of uniform size and prominence.

The district court found that the challenged food had the appearance of standard fruit jams; that it was made to taste like and did taste like standard fruit jams; that it was used by consumers in the place of and as a substitute for standard fruit jams; that it was often advertised as jam and that orders by the consuming public for jam were frequently filled by delivery of the challenged food; and that it was frequently served by hotels in response to orders for jams or preserves without disclosure that it did not comply with the requirements for standard fruit jam. Stipulations filed in the district court established that the challenged food was wholesome and had food value, and that it looked like standard jam. The district court dismissed the condemnation proceeding, holding that the case was controlled by another subsection of § 343, namely subsection (c), which provided that a food shall be deemed to be misbranded "if it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word 'imitation' and, immediately thereafter, the name of the food imitated." The district court construed subsection (c) affirmatively to permit the challenged food to be marketed, whether or not the article of food it imitated was an article of food for which the Administrator had duly prescribed a definition and standard. *United States v. 62 Cases, etc.*, 87 F.Supp. 735 (D.N.M.1949).

With one panel member dissenting, the court of appeals reversed. 183 F.2d 1014 (10th Cir. 1950). It emphasized the importance Congress had attached to the whole concept of developing definitions and standards of identity for certain foods. It said (1018) with respect to § 343(g):

"Whether a food purports to be, or is represented to be, a food for which a definition and a standard of identity has been prescribed by regulation, is not to be determined solely from obscure disclosures on the label. If it is sold under a name of a food for which a definition and standard has been prescribed, if it looks and tastes like such a food, if it is bought, sold and ordered as such a food, and if it is served to customers as such a food, then it purports to be, and is represented to be, such a food."

The court of appeals held that the challenged food purported to be and was represented to be fruit jam; that it did not conform to the definition and standard of identity for fruit jam; and that the manufacturer could not escape the impact of § 341 and 343(g) by labeling the food "Imitation Jam" and by truthfully setting forth on the label the proportions of sugar, fruit, and other ingredients contained in it. The court disposed of the impact of subsection (c) simply by declaring that the challenged food was "sub-standard jam," rather than "imitation fruit jam." The dissenting judge noted (1018–1019) that the position of government counsel in the case was that if a food "purports to be" a food for which a definition and standard of identity have been prescribed, and if it does not conform to that definition and standard of identity, it is barred from interstate trade, regardless of the label, and that government counsel had urged that "purport" be construed to mean "any food which looks and tastes like and is sold and used for the same purpose as that food for which standards are fixed." The dissenting judge believed, I think correctly, that the court could not escape the necessity either to accept or reject the government's position. If the government's position was correct, "then no form of label would permit entry of the seized product into the channels of interstate trade." 183 F.2d, at 1019. Because of the provisions of subsection (c), the dissenting judge rejected the government's position; that is, he concluded that Congress intended to permit close physical resemblance provided that the label sufficiently apprised that the challenged food was an imitation of a food for which a definition

and standard of identity had been prescribed.[4]

The Supreme Court of the United States reversed the judgment of the court of appeals. 340 U.S. 593, 71 S.Ct. 515, 95 L.Ed. 566. It held that "a practice Congress authorized" by § 343(c) (permitting the marketing of imitation foods if clearly enough labeled as imitations) had not been "impliedly prohibited" by § 343(g). The Supreme Court held that in § 343(g), "Congress used the words 'purport' and 'represent'—terms suggesting the idea of counterfeit." 340 U.S., at 600, 71 S.Ct. at 520. But because it had been labeled "candidly and flagrantly" as an imitation, the challenged food: " . . . purports and is represented to be only what it is—an imitation. It does not purport nor represent to be what it is not—the Administrator's 'genuine jam.' " *Ibid.* The Court noted (600, 71 S.Ct. at 520) that the government was seeking a ruling "that when the Administrator standardizes the ingredients of a food, no imitation of that food can be marketed which contains an ingredient of the original and serves a similar purpose." The Court observed (600–601, 71 S.Ct. at 520–521) that its earlier decisions indicated that Congress might well be free to legislate "that nothing shall be marketed in likeness to a food as defined by the Administrator, though it is accurately labeled, entirely wholesome, and perhaps more within the reach of the meager purse . . . . " But the Court held that in the face of § 343(c), Congress could not be thought to have done so in § 343(g).

Plaintiff here contends that it can be inferred from the circumstances that when on May 26, 1951 (which was two months after the date on which the Supreme Court of the United States decided *62 Cases of Jam* ), the assembly of the state of Wisconsin passed, and on June 6, 1951, the state senate passed, and on July 5, 1951, the governor approved the bill which created what is now § 97.48(1), Wis.Stats., the words "purports to be or is represented as"

were picked up from 21 U.S.C. § 343(g), and that it was generally the intent of the Wisconsin legislature at the time to harmonize state legislation with the Federal Food, Drug, and Cosmetic Act, as revised in 1938. This is a fair conclusion. Because nothing in the language of § 97.48(1) or in its legislative history suggests or requires a different construction, plaintiff urges that I construe "purports to be or is represented as" in § 97.48(1) as the Supreme Court of the United States construed those words in § 343(g).

Differences between 21 U.S.C. § 343(g) and § 97.48(1), Wis.Stats., must first be noted: (a) The construction placed upon § 343(g) by the district court and eventually by the Supreme Court of the United States in *62 Cases of Jam* was powerfully influenced, probably decisively, by the co-existence of subsection (c). Section 97.03, Wis. Stats., corresponds generally to 21 U.S.C. § 343 in the sense that it too defines foods which are "misbranded." But § 97.03 contains no subsection corresponding to subsection (c) of 21 U.S.C. § 343, and no such Wisconsin statute has come to my attention. (b) Section 343 of Title 21, U.S.C. consists expressly of a series of definitions of food which shall be deemed "misbranded." So does § 97.03, Wis.Stats. But § 97.48(1) stands separately and distinctly from the "misbranding" statute. (c) In *62 Cases of Jam*, the Supreme Court of the United States remarked (340 U.S., at 600, 71 S.Ct. at 520) that subsection (g) of 21 U.S.C. § 343 "was designed to protect the public from inferior foods resembling standard products but marketed under distinctive names. See S.Rep.No. 361, 74th Cong., 1st Sess. 8–11." Although I have examined the cited Senate committee report, this comment remains inexplicable to me. However, the comment may have some bearing on the present case in light of Choco-Riffic's nutritional inferiority to chocolate-flavored 1% low fat milk, its resemblance to

---

4. The majority was unwilling to acknowledge that the effect of its ruling was to compel the manufacturer to take this product off the interstate market. The majority suggested that it could continue to market the same product as syrup and fruit or as syrup flavored with fruit, but no longer as "fruit jam."

chocolate-flavored 1% low fat milk, and its distinctive name.

Nevertheless, *62 Cases of Jam* is an aid to construction of § 97.48(1) in a major respect. The Supreme Court declared that the words "purport" and "represent" are "terms suggesting the idea of counterfeit." And the Court was emphatic that the legislative body must be direct in expression if it intends to bar a food from the market solely on the basis of its physical properties when compared to the physical properties of another food, even in the absence of confusion among purchasers and consumers.

 Based upon the language of § 97.-48(1) itself, its position in the Wisconsin statutory scheme, its legislative history as it reflects a conscious awareness of the federal statutory and regulatory scheme, the federal statutory and regulatory scheme itself, the holding and language in *62 Cases of Jam*, and the entire record in this case, I conclude that § 97.48(1) cannot reasonably be construed as a flat prohibition of the sale of a food (which contains any fat or oil other than milk fat) solely because the food so closely resembles milk in terms of total solids, color, flavor, body, sweetness level, texture, viscosity, taste and odor as to make it reasonably probable that it will be confused with milk by purchasers and consumers who rely wholly on viewing, tasting, smelling and touching the substance itself. Put differently, I conclude that § 97.48(1) cannot reasonably be construed as a flat prohibition of the sale of a food (which contains any fat or oil other than milk fat) if its physical resemblance to milk is sufficiently close, without regard to any other factor involved in causing or eliminating confusion.

I make explicit that I consider this to be at odds with, and to represent a withdrawal from, the construction I placed on § 97.48(1) on August 31, 1979, when I granted the preliminary injunction.

2. *Is § 97.48(1), taken as a whole, to be construed strictly as a labeling statute?*

 If § 97.48(1) is viewed as an anti-confusion measure, as plaintiff views it and as I view it, the legislature cannot reasonably be thought to have limited its attention to labeling. It is inescapable that the physical properties of the challenged food are a factor. If Choco-Riffic were an apple, a beet, or a leg of lamb, there would be no occasion for plaintiff to employ a label to advise purchasers and consumers that its product is not milk. Quite apart from labeling, packaging, and manner of display, the physical resemblance or lack of resemblance of a particular food product to milk is highly relevant to the potential for confusion. Moreover, such physical resemblance or lack of resemblance is relevant to the potential for repeated confusion as to the same consumer over a period of time. The greater the physical resemblance, the more questionable the adequacy of any particular label. The act of creating a product containing any fat or oil other than milk fat but closely resembling milk is itself an act which gives rise to a potential for confusion. The same is true of the act of packaging the product in a manner closely resembling the packaging used earlier for milk. The same is true of the act of displaying the product, or causing it to be displayed, in a manner closely resembling the manner in which milk has earlier been displayed.

Thus, a reasonable construction of § 97.-48(1) requires that factors other than labeling be included within its scope, and that these factors include the physical resemblance between milk and the challenged product. I conclude that § 97.48(1), taken as a whole, may not be construed strictly as a labeling statute.

3. *Is § 97.48(1), taken as a whole, reasonably to be construed as a prohibition against the sale of a food (which contains any fat or oil other than milk fat) only if under all the circumstances in which it is sold and used, including its physical resemblance or lack of physical resemblance to milk, it is reasonably probable that the challenged food will be confused with milk by purchasers and consumers?*

The discussion of questions (1) and (2), above, reveals that my conclusion must be—and it is—that § 97.48(1) should be so construed. It makes no sense that the legislature would address the perceived problem of confusion among purchasers and consumers about the relationship between milk and a challenged food product, but would consciously exclude factors significantly affecting the presence or absence of such confusion. The only question is whether, inadvertently, the legislature chose words ("purports to be or is represented as") which clearly exclude certain significant factors. As I remarked in my August 31, 1979 opinion, the choice of the words "purports to be or is represented as" was not the happiest choice to serve the obvious purpose, particularly with respect to the factor of physical resemblance between milk and a challenged food. But I conclude those words may fairly be construed, and I do construe them, to include all of those activities in the course of manufacturing or marketing a food which contains any fat or oil other than milk fat, which activities make it reasonably probable that a substantial portion of the purchasers and consumers of the challenged food will believe that they are purchasing and consuming milk.

4. *Can the phrases "is represented as" and "purports to be," taken separately, reasonably be construed in such a way as to accomplish the purpose of § 97.48(1) while avoiding redundancy?*

My earlier preoccupation with this question may well have contributed to what I now regard as a lack of perspective on the larger questions of statutory construction. However, I adhere to my earlier view that the factor of physical resemblance or lack of physical resemblance between milk and a challenged food is a factor which rests more comfortably in "purports to be" than in "is represented to be." Beyond that, the phrase "is represented to be" accommodates most readily verbal or pictorial expression concerning the challenged food, as contrasted with conduct which conveys impressions by indirection. In the order below, I construe § 97.48(1) so as to limit the scope of

the phrase "is represented to be" in this manner. The result, I believe, is a workable construction of the two phrases which avoids redundancy.

### Conclusion

#### I.

What I have said and done in this opinion and in the order below, construing § 97.-48(1) anew, bears upon the basis for the issuance of the preliminary injunction. When the motion for a preliminary injunction was presented and briefed and argued, I understood plaintiff's position to be: (1) that § 97.48(1) is the stated basis for defendants' interference with the sale of Choco-Riffic in Wisconsin; (2) that § 97.-48(1), properly construed, does not prohibit the sale of Choco-Riffic; (3) that if defendants persist in their interference with the sale of Choco-Riffic, despite the absence of any Wisconsin statutory authority to do so, then their administrative action is itself a violation of the Constitution of the United States; and (4) that if § 97.48(1) were to be construed, contrary to plaintiff's views, so as to prohibit the sale of Choco-Riffic, then the statute itself violates the Constitution of the United States. Defendants contended that, properly construed, § 97.48(1) prohibits the sale of Choco-Riffic in Wisconsin, and that the statute so construed does not violate the Constitution of the United States.

I held: (1) that for the purpose of deciding the motion for a preliminary injunction, I would construe § 97.48(1) so as to prohibit the sale of Choco-Riffic in Wisconsin; and (2) that the plaintiff enjoyed a reasonably good chance to prevail ultimately in its contention that § 97.48(1), with its total prohibition of sales, violates the commerce clause of the Constitution of the United States.

I am no longer prepared to hold, even for the purpose of the motion for a preliminary injunction, that § 97.48(1) prohibits the sale of Choco-Riffic in Wisconsin. When § 97.48(1) is construed as I now construe it, its applicability or nonapplicability

to the sale of Choco-Riffic will turn upon fact finding with respect to all of the manufacturing and marketing activities that do or do not make it reasonably probable that a substantial portion of the purchasers and consumers of Choco-Riffic will believe that they are purchasing and consuming chocolate-flavored lowfat milk. On the basis of the evidence adduced on the motion for a preliminary injunction (I imply nothing about the evidence which may be forthcoming at trial), I would hold that by virtue of the information appearing on the label, plaintiff has shown a reasonable chance to succeed ultimately in this lawsuit in its contention that § 97.48(1), construed as I now construe it, does not prohibit the sale of Choco-Riffic in Wisconsin. In that event, defendants' administrative action interfering with the sale of Choco-Riffic, unauthorized by statute, would probably be vulnerable to yet more intense scrutiny under the commerce clause than it would be if it were authorized by the state legislature.

On the other hand, if I were to hold that plaintiff had not yet met its evidentiary burden to show the probable nonapplicability of § 97.48(1), I would then proceed on the basis that § 97.48(1) does prohibit the sale of Choco-Riffic. The case would be in the approximate posture in which I viewed it on August 31, 1979. My conclusion would be the same: that plaintiffs enjoy a reasonable chance to succeed in their contention that § 97.48(1)'s flat prohibition of sale, as contrasted with other less restrictive measures, unduly burdens interstate commerce.

## II.

The parties are entitled to an expression by the court on the question of how § 97.48(1) is to be construed in this lawsuit. This opinion and order represent an effort to respond to this need. However, I appreciate that in at least one important respect, I am engaging in a formulation on which counsel have not yet had an adequate chance to be heard. That is, in the order below, I use the language: "makes it reasonably probable that a substantial portion of the purchasers and consumers of Choco-Riffic will believe that they are purchasing and consuming milk." Conceivably, plaintiff may wish to contend, for example, that "reasonably probable" should be supplanted by "virtually certain," that "substantial portion" should be supplanted by "vast majority," and that the beliefs of consumers, as contrasted with purchasers, should be disregarded. Conceivably, defendants may wish to contend that the standard should be revised in the opposite direction. Motions to that effect will be entertained at anytime prior to a final adjudication on the merits in this court. Obviously, the court will be less inclined to engage in such modifications and amplifications as time passes and the parties proceed with discovery and the presentation of evidence on a certain set of assumptions about the nature and allocation of burdens of proof.

### Order

It is ordered that § 97.48(1), Wis.Stats., is construed as follows in the factual context of this case:

1. If plaintiff engages in any verbal or pictorial expression, or causes another to engage in any verbal or pictorial expression, whether by means of labeling or advertising or other similar devices, which makes it reasonably probable that a substantial portion of the purchasers and consumers of Choco-Riffic will believe that they are purchasing and consuming chocolate-flavored lowfat milk, plaintiff will be considered to be representing Choco-Riffic as chocolate-flavored lowfat milk, within the meaning of § 97.48(1).

2. If plaintiff engages in any activity or activities in the course of manufacturing or marketing Choco-Riffic, or causes another to engage in such activity or activities, which activities make it reasonably probable that a substantial portion of the purchasers and consumers of Choco-Riffic will believe that they are purchasing and consuming chocolate-flavored lowfat milk, it will be considered that Choco-Riffic is purporting to be chocolate-flavored lowfat milk, within the meaning of § 97.48(1). "Activities" may include, but are not limit-

**530**

ed to: the manufacture of a food product which physically resembles or physically does not resemble chocolate-flavored lowfat milk, the use of packaging which resembles or does not resemble the packaging used earlier for chocolate-flavored lowfat milk, the display of Choco-Riffic in a manner which resembles or does not resemble the manner of display used earlier for chocolate-flavored lowfat milk, and verbal or pictorial expression in labeling, advertising, or other similar devices which does or does not state or imply that Choco-Riffic is milk.